UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KAELEIGH DIGON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| JOSEPH JOHNSTON, individually in his personal capacity and in his professional capacity of Suffolk County Juvenile Court Judge, | ) ) ) ) ) | Civil Action No. 16-11088-NMG |
| Defendant. | ) ) ) | |

## MEMORANDUM AND ORDER

**GORTON, D.J.**

For the reasons set forth below, plaintiff's Motion for Leave to Proceed *in forma pauperis* (Docket No. 2) is <u>ALLOWED,</u> the Defendant's Motion to Dismiss (Docket No. 6) is <u>ALLOWED</u>, this action is <u>DISMISSED</u> in its entirety with prejudice, and the Court <u>CERTIFIES</u> that any appeal would not be taken in good faith.

**I.      Background**

On June 8, 2016, plaintiff Kaeleigh Digon ("Digon"), a resident of Boston, Massachusetts, filed a self-prepared Complaint along with a Motion for Leave to Proceed *in forma pauperis*.   While the Complaint is not entirely coherent it appears the matter stems from Digon's dissatisfaction with various rulings and orders issued by Suffolk County Juvenile Court Judge, Joseph Johnston ("Judge Johnston"), in connection with child custody matters.   Digon

1

alleges that Judge Johnston plotted to harm her by abusing his judicial authority in the juvenile court. She further contends that, because she had reported his conduct to the Department of Justice and the Commissioner's Office of Judicial Conduct, Judge Johnston retaliated to defame her and sabotage her court case, without cause, in order to keep her child away from her and make it difficult for her to get back her child. She also alleges that his actions caused her to have a break-down from her known anxiety. She claims that he prolonged her case as long as possible and deflected attention away from his own misconduct. Additionally, Digon contends that throughout the court proceedings in the juvenile court, Judge Johnston expressed bias and contempt for her.

With respect to the delay, Digon claims that Judge Johnston failed to follow the laws of a "rolling trial" and, instead, held the trial sporadically over a four-month period and then took sixteen (16) months to complete, allegedly four months over the required legal time. Moreover, Digon alleges that Judge Johnston failed to issue timely his Findings of Fact and did not do so until after she petitioned the Massachusetts Supreme Judicial Court for a Writ of Mandamus.

With respect to the trial proceedings, Digon claims Judge Johnston refused to rule on any evidence except hers, refused to permit her to rebut points and accusations made by the other parties, allowed unlawful questioning, admitted evidence of other parties, permitted witness tampering, and refused to permit her to call the social worker in the case or any of her witnesses or rebuttal witnesses. As a result, she alleges her due process rights were violated. Additionally, Digon contends that Judge Johnston violated her rights under the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. §§ 1320d *et. seq.* by distributing and sharing her privileged and sealed medical and mental health records.

Next, Digon takes issue with a number of findings made by Judge Johnston, including, *inter alia*, the findings that Digon had held her husband against his will at their apartment, shook her child so as to cause fractures, made false domestic violence allegations against her ex-husband, was dishonest with the court, was unfit due to mental illness, and was abusing substances. She further claims Judge Johnston intentionally misquoted evidence and testimony, altered evidence, relied on evidence not admitted, and created his own version of events throughout the proceedings.

Finally, Digon claims that Judge Johnston's actions were not within the scope of his authority and that he: 1) deliberately did not follow state and federal laws; 2) acted arbitrarily due to personal bias and prejudice against her; 3) deliberately violated judicial canons; 4) falsified court documents to satisfy his own personal agenda, and; 5) abused his governmental position to cause her harm while disregarding the best interests of the child to suit his personal agenda. She lists her counts in the Complaint as fraud upon the court, intentional tort liability, public nuisance, intentional infliction of mental and emotional distress, defamation, intentional violation of due process rights, intentional violation of civil rights, intentional violation of parental rights, intentional violation of HIPPA and privacy laws, and harassment (by abusing his authority as juvenile court judge).

As relief, Digon seeks $5,000,000 in compensatory damages, $5,000,000 in punitive damages, and $14,000,000 in special damages. She states she intends to use 75% of the proceeds from this lawsuit to expand "Families Together MA," a nonprofit program she founded. She also seeks injunctive and equitable relief in the form of an Order requiring Judge Johnston to recuse himself from any court proceedings in which she is involved, requiring him to destroy and

remove from the record any and all privileged documents, compelling him to withdraw, amend, void, and/or expunge his findings, conclusions and other orders in the juvenile court case, and report the findings in this case to the Massachusetts Bar Association and Commissioner's Office of Judicial Conduct.   Finally, she seeks to have this Court recommend that Judge Johnston immediately be removed from his position as a juvenile court judge and recommend that criminal charges be brought against Judge Johnston.

Incorporated into her Complaint is a recitation of case law supporting her contention that absolute judicial immunity does not apply.   Additionally, along with the Complaint, Digon filed a Motion for Leave to Proceed *in forma pauperis* (Docket No. 2).

On June 30, 2016 - - before this Court made any rulings on Digon's motion and before any summons issued - - the defendant filed a Motion to Dismiss (Docket No. 6) along with a Memorandum in Support (Docket No. 7) and a Certificate of Consultation (Docket No. 8).   The defendant argues this action must be dismissed for lack of subject matter jurisdiction and for failure of Digon to state plausible claims.   To date, no response to the motion has been filed by Digon.

**II.     Discussion**

    **A.     The Motion for Leave to Proceed *In Forma Pauperis***

Upon review of Digon's financial affidavit, this Court finds that she lacks sufficient funds to pay the filing and administrative fees of the Court.   Accordingly, her Motion for Leave to Proceed *in forma pauperis* (Docket No. 2) is <u>ALLOWED</u>.

    **B.     Standard of Review: 28 U.S.C. § 1915, Fed. R. Civ. P. 12(b)(6), and Fed. R. Civ. P. 12(b)(1)**

Generally, when a plaintiff seeks to file a complaint without prepayment of the filing fee,

summonses do not issue until the Court reviews the complaint and determines that it satisfies the substantive requirements of 28 U.S.C. § 1915.   This statute authorizes federal courts to dismiss a complaint *sua sponte* if the claims therein are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief against a defendant who is immune from such relief.   See 28 U.S.C. § 1915(e)(2).

Further, in addition to the statutory screening requirements under § 1915, this Court has an independent obligation to inquire, *sua sponte*, into its subject matter jurisdiction.   See United States v. Univ. of Mass., Worcester, 812 F.3d 35, 44 (1st Cir. 2016); McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); see also In re Recticel Foam Corp., 859 F.2d 1000, 1002 (1st Cir. 1988).   The party invoking the jurisdiction of the federal court carries the burden of proving the existence of subject matter jurisdiction over the causes of action alleged.   Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 2000).

In this case, however, no preliminary screening under the auspices of the *in forma pauperis* statute is necessary insofar as the defendant already has filed a Motion to Dismiss based on lack of subject matter jurisdiction and failure to state plausible causes of action.   In light of this, the Court will address the issues in the context of the motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). *Pro se* pleadings are to be liberally construed. Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000); Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir. 1991). Nevertheless, while the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.; see also Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.") (citations omitted). Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of misconduct. Iqbal, 556 U.S. at 679.

Applying the standards noted above, this Court finds that it lacks subject matter jurisdiction over this action, and further finds that Digon fails to state plausible claims upon which relief may be granted, for the reasons set forth below.

    **C. Lack of Jurisdiction Under the Rooker-Feldman Doctrine, the Domestic Relations Exception to Jurisdiction, Lack of Mandamus Jurisdiction, and Eleventh Amendment Sovereign Immunity as a Bar to Monetary Damages Claims.**

The defendant argues in its Memorandum in Support of the Motion to Dismiss that the Rooker-Feldman doctrine strips this Court of jurisdiction over Digon's civil rights, defamation

and intentional tort claims because her Complaint invites the Court to review and reverse unfavorable state court judgments.1   Memorandum (Docket No. 7 at 7) citing Ives v. Agastoni, et. al., 2015 W.L. 9647559 (D. Mass. 2015).   The Court agrees and finds that, in legal effect, Digon is seeking federal review and reversal of a final decision of a state court, as apparent by her request for this Court to withdraw, amend, void, and/or expunge rulings and orders made by Judge Johnston.   Thus, the Rooker-Feldman doctrine bars her claims.

Relatedly, although not raised by the defendant in the Motion to Dismiss, to the extent that Digon is seeking to alter the parameters of the custody of her child (as appears to be the case), this Court should abstain from interfering with the state case that involves domestic matters such as child custody, visitation, or other related child issues because of the domestic relations exception to jurisdiction.   The premise behind the domestic relations exception is that federal courts should not interfere in domestic disputes, including disputes over marital property or the custody of children, because state courts have developed the proficiency and specialized resources necessary to handle such cases.   See Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992).   The Ankenbrandt Court held that "the domestic relations exception, as articulated by this Court . . .  divests the federal courts of power to issue divorce, alimony, and child custody

---

[1]The Rooker-Feldman doctrine is a distillation of two Supreme Court decisions: Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).   The doctrine precludes a federal action if the relief requested in that action would effectively reverse a state court decision or void its holding or if the plaintiff's claims are "inextricably intertwined" with the state court's decision.   See Johnson v. De Grandy, 512 U.S. 997, 1005-1006 (1994); Coggeshall v. Mass. Bd. of Reg'n of Psychologists, 604 F.3d 658, 663 (1st Cir. 2010) citing Exxon Mobil Corp. v. Saudi Basic Industries Corp., Inc., 544 U.S. 280, 291 (2005) (doctrine applies to cases by state court losers seeking review and rejection of state court judgments rendered prior to commencement of federal suit).

decrees." Id. at 703. See Mandel v. Town of Orleans, 326 F.3d 267, 271 (1st Cir. 2003) ("[The domestic relations] exception prohibits federal courts from issuing or altering divorce, alimony, and child custody decrees.").

Here, although there does not appear to be diversity jurisdiction alleged, Digon's request to void rulings against her with respect to child custody otherwise falls within the domestic relations exception. Indeed, were this Court to exercise jurisdiction, it would be required to investigate the needs of the child as well as Digon's current capabilities as a parental custodian. The state court is in the best position to serve these family interests. Additionally, the presence of family-related matters in this action argues strongly for the propriety of total abstention. "The First Circuit has stated that even if a case is not strictly fit for the application of the domestic relations exception, principles of comity would still make abstention appropriate." Mojica v. Nogueras-Cartagena, 573 F. Supp. 2d 520, 523 (D. P.R. 2008) (citing Armstrong v. Armstrong, 508 F.2d 348 (1st Cir. 1974)); see Sutter v. Pitts, 639 F.2d 842, 843 (1st Cir. 1981) ("[A]lthough the exception has been narrowly confined, we and other courts of appeals, have held that federal courts should abstain from adjudicating claims that are closely related to, though not within, the jurisdictional exception."); see LaMontagne v. LaMontagne, 394 F. Supp. 1159, 1169 (D. Mass. 1975) (holding that reasons of comity and common sense made abstention appropriate where, although father of minor child sued mother, probation officers and others alleging violation of Eighth and Fourteenth Amendment rights, the action was essentially a domestic relations contest).

Next, as a further jurisdictional consideration, this Court notes that, to the extent Digon seeks an Order requiring Judge Johnston to modify, vacate, expunge or otherwise his ruling, this

also is, in legal effect, a request for a writ of mandamus compelling a state officer to act in a certain way with respect to state court litigation. This Court lacks jurisdiction to do so.

Section 1361 of Title 28 governs the original jurisdiction of the district court over any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff. 28 U.S.C. § 1361. This applies to federal officers, employees or agencies, but does not apply to state court judges or clerks. See Burnett v. Superior Court of Marin County, 573 F. Supp. 345 (N.D. Cal. 1983) (district court lacks jurisdiction to compel state court to perform its alleged duty).

Similarly, this Court lacks jurisdiction under 28 U.S.C. § 1651, to compel a state judicial officer to act in a certain manner. Section 1651 provides authority to the Supreme Court and all courts established by an Act of Congress to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. Section 1651 is not available in this case because a federal district court cannot, by writ of mandamus, direct a state court or judicial officer to perform an official act. See In re Campbell, 264 F.3d 730, 731 (7th Cir. 2001) (petition for writ of mandamus filed under § 1651 denied; federal court cannot control or interfere with state court litigation by way of mandamus); See also Offutt v. Kaplan, 884 F. Supp. 1179, 1183, 1187-88 (N.D. Ill. 1995) (federal action brought under § 1651 and § 1983 against presiding judge in state custody proceedings dismissed on ground that a federal district court has no jurisdiction to review state judicial proceedings; citing, *inter alia*, Feldman, 460 U.S. at, 476).

Finally, the defendant contends that Digon's civil rights claims seeking monetary damages against Judge Johnston in his official capacity are barred by the Eleventh Amendment,

citing Coggeshall v. Mass. Bd. of Reg. of Psychologists, 604 F. 3d 658, 662 (1st Cir. 2010). The court agrees.    The Eleventh Amendment bars suits against an unconsenting state brought by its own citizens as well as by citizens of another state.    Pennhurst State Sch.& Hosp. v. Halderman, 465 U.S. 89, 100 (1984).    The jurisdictional bar applies to federal constitutional claims as well as to state law claims asserted under the Court's pendant (*i.e.,* supplemental) jurisdiction.    Id. at 119; see Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985) citing Alabama v. Pugh, 438 U.S. 781, 782 (1978)).    The Eleventh Amendment also extends to confer immunity from suit upon state officials when "the state is the real substantial party in interest," that is, when "the judgment sought would expend itself on the public treasury . . . or interfere with the public administration . . . . "    Pennhurst State Sch. & Hosp., 465 U.S. at 101-102, n. 11; accord Hafer v. Melo, 502 U.S. 21, 25 (1991) (same).

Apart from the jurisdictional impediments to Digon's claims noted above, to the extent that her claims do not fall within the Rooker-Feldman or Domestic Relations doctrines, or do not involve requests for mandamus relief or monetary damages in Judge Johnston's official capacity, the claims against Judge Johnston nevertheless are barred by other legal impediments that undermine the viability of her claims, as discussed below.

### D.    Absolute Judicial Immunity Bars Claims Against Judge Johnston

The defendant argues that Digon's claims of defamation, intentional infliction of emotional distress are barred by the doctrine of absolute judicial immunity, citing*, inter alia*, Goldstein v. Galvin, 719 F.3d 16, 24 (1st Cir. 2013) (noting the doctrine applies to judges performing judicial acts even if the judge acted maliciously, corruptly, or erroneously).    The Court, however, finds that all of Dignon's claims against Judge Johnston are barred because she

10

is suing a state court judge who is entitled to absolute judicial immunity from suit for acts performed within the scope of his jurisdiction. Mireles v. Waco, 502 U.S. 9, 11 (1991) (*per curiam*) ("[J]udicial immunity is an immunity from suit, not just from the ultimate assessment of damage."); Pierson v. Ray, 386 U.S. 547, 553-554 (1967) (absolute judicial immunity protects integrity of judicial process); Allard v. Estes, 197 N.E. 884, 886 (1935) (stating that is it "too well settled to require discussion, that every judge, whether of a higher or lower court, is exempt from liability to an action for any judgment or decision rendered in the exercise of jurisdiction vested in him by law.").

The reason for recognizing this form of immunity is that:

> [T]he nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have . . . [T]his is the principal characteristic that adjudication has in common with legislation and with criminal prosecution, which are the two other areas in which absolute immunity has most generously been provided. If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication.

Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760, 768 (3d Cir. 2000) (quoting Forrester v. White, 484 U.S. 219, 226-27 (1988)).

In this case, although Digon believes that Judge Johnston erred in his rulings and orders in connection with her state case based on discriminatory animus or a set agenda, or that he otherwise acted wrongfully, this Court considers his actions, as alleged, still are within the scope of his judicial jurisdiction. Put another way, the Court cannot find that the alleged misconduct was taken in the clear absence of all jurisdiction. Even construing the Complaint broadly, Dignon's allegations cannot serve as a basis to undermine the doctrine, notwithstanding her

contention that absolute judicial immunity does not apply. The case law she cites in her Complaint in support simply is not persuasive and contravenes established law in this Circuit.

Thus, under these circumstances, absolute judicial immunity bars suits against judges, regardless of the relief sought. See Aldrich v. Considine, 2013 WL 4679722, *7 (D. Mass. 2013). To the extent that Digon believes this Court should disregard the doctrine entirely, or believes that her constitutional claims trump the absolute judicial immunity doctrine, such assertion is contrary to well-established law and does not provide a basis to permit this action to proceed.

### E. Failure to Allege an Inadequate State Remedy

As an additional matter (not raised by the defendant), to the extent that Digon claims that her due process rights have been violated, she has failed to allege sufficiently that she has an inadequate state remedy to redress her grievances. Here, an inadequate remedy is the lack of the ability to pursue the state process (such as an appeal to the state appellate courts), not the inability to obtain the desired judgment itself. When an alleged deprivation of liberty or property is the result of the random and unauthorized conduct of a state official, and the state has provided an adequate post-deprivation remedy, there is no denial of due process. See Hudson v. Palmer, 468 U.S. 517, 531-37 (1984); Parratt v. Taylor, 451 U.S. 527, 538-44 (1981); O'Neill v. Baker, 210 F.3d 41, 50 (1st Cir. 2000). See also Riordan v. Martin, 51 F.3d 264 (1st Cir. 1995) (unpublished disposition stating that "[s]ince inadequacy of the state's remedy is a material element of the § 1983 claim, plaintiff had the burden of setting forth supporting factual allegations, either direct or inferential, to sustain an actionable legal theory." citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)); Dore v. Feeley, 2012 WL 194421 (D. Mass.

2012); Rondeau v. Rogers, 2010 WL 3070192, *6 (D.N.H. 2010) ("A procedural due process claim may not be redressed under section 1983 where an adequate state remedy exists." quoting Reid v. New Hampshire, 56 F.3d 332, 241 (1st Cir. 1995)).

### F.   No Private Right of Action Under HIPAA

As a final matter, the defendant argues that Digon's claims for HIPAA violations by purportedly permitting her ex-husband and his attorney to copy privileged and sealed records in connection with the state court proceedings, fails to state a plausible claim because there is no private right of action under HIPAA.   The Court agrees.   HIPAA does not provide a private right of action for violations of the statute.   Miller v. Nichols, 586 F.3d 53 (1st Cir. 2009); see Spencer v. Roche, 755 F. Supp. 2d 250, 271 (D. Mass. 2010).   Although the law provides for civil and criminal penalties for those who improperly handle or disclose certain health information, the statute "specifically indicates that only the Secretary of Health and Human Services or other authorized state authorities may bring forth a HIPAA enforcement action." Munoz v. Island Finance Corp., 364 F. Supp. 2d 131, 136 (D. Puerto Rico 2005).

In light of all of the above, the defendant's Motion to Dismiss (Docket No. 6) is ALLOWED and this action is DISMISSED with prejudice.

### G.   Certification That Any Appeal Would Not Be Taken in Good Faith

Pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. App. P. 24(a)(3), the Court finds, and hereby CERTIFIES, that any appeal by Digon of the matters contained in this Memorandum and Order would not be taken in good faith.   Such a certification prohibits *in forma pauperis* status on appeal even though Digon has been found to be indigent.

Under 28 U.S.C. § 1915(a)(3) "[a]n appeal may not be taken in forma pauperis if the trial

court certifies in writing that it is not taken in good faith." Id. Similarly, under Fed. R. App. P. 24(a)(3), "a party who has been permitted to proceed in forma pauperis in the district-court . . . may proceed on appeal in forma pauperis without further authorization, unless . . . the district court . . . certifies that the appeal is not taken in good faith . . . . " Id. "The applicant's good faith is established by the presentation of any issue that is not plainly frivolous." Ellis v. United States, 356 U.S. 674 (1958) (*per curiam*); see Lee v. Clinton, 209 F.3d 1025, 1026 (7th Cir. 2000). A complaint is "frivolous" if "it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).

For the reasons stated in this Memorandum and Order, this Court finds that any appeal of the dismissal of this action would be one that plainly does not deserve additional judicial attention. Should Digon seek to appeal the dismissal of this action, she must pay the appellate filing and docketing fees, or she must seek leave to proceed *in forma pauperis* directly from the United States Court of Appeals for the First Circuit.

### III. Conclusion and Order

Based on the foregoing, it is hereby Ordered that:

1. Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Docket No. 2) is ALLOWED;

2. Defendant's Motion to Dismiss (Docket No. 6) is ALLOWED;

3. This action is DISMISSED *sua sponte* in its entirety with prejudice; and

4. This Court CERTIFIES that any appeal would not be taken in good faith.

**SO ORDERED.**

    /s/ Nathaniel M. Gorton
UNITED STATES DISTRICT JUDGE

DATED: August 4, 2016